IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**LATONYA EASON,** *Individually and on Behalf of her Minor Son*, **Q.E**.                                                                 **PLAINTIFFS**

v.                                                                                                          No. 3:24-CV-49-MPM-JMV

**CITY OF SENATOBIA,** *et al.*                                                                             **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the Court on Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment [47]. The Court, having reviewed the record and carefully considered the applicable law, is now prepared to rule.

### FACTS

This case explores the legal parameters of arresting a ten-year-old child for public urination. In August 2023, Plaintiff Latonya Eason was visiting a law office in downtown Senatobia, Mississippi when she asked the owner if her ten-year-old son, Plaintiff Q.E., could use the restroom. The owner motioned towards a sign indicating "no." Shortly thereafter, Q.E.—wanting to follow the rules but facing an increasingly urgent personal dilemma—quietly slipped outside and, in a Dickensian twist, "went" in the owner's parking lot which faced the county courthouse.

An alert police officer witnessed the child relieving himself and intervened. He found the boy's mother and scolded her, intent on letting the family go. This reasonable denouement was not to be. Just as the officer was sending the mother and child on their way, more police officers arrived

1

and observed that the car the mother was driving had been involved in a recent burglary. This burglary must have been a high-priority matter for the Senatobia Police Department for even though Ms. Eason was already scheduled to come to the station later that afternoon for questioning, and even though she had verbally affirmed her continued intention of making this appointment just moments earlier, these officers, wanting to make absolutely sure they would be able to question her, huddled and devised a plan: Arrest Q.E. and take him to the police station so his mother would be forced to come to the station to pick him up at which point the officers could use the child as bait to question the mother about the burglary.

When the officers informed Ms. Eason that they were arresting her son and taking him to the station, she became upset. She could not make sense of why her ten-year-old son was being arrested for such a minor infraction. An officer transported Q.E. without restraints to the police station and processed the child before taking him to the conference room where they waited for his mother. Q.E. and the officer practiced math and talked sports while his mom was being questioned in an adjacent room. When the interrogation of Ms. Eason was complete, she and the child left the station.

The Tate County Youth Court had jurisdiction over Q.E.'s charges. Although the court initially gave Q.E. probation and ordered him to write a two-page report, the court later dismissed the charges. Ms. Eason and Q.E. (collectively, "the Easons") then sued the City of Senatobia ("the City"), chief of police Richard Chandler ("Chief Chandler"), and former police officer Zachary Jenkins ("Officer Jenkins") claiming (1) excessive force, (2) negligence, (3) negligent and intentional infliction of emotional distress, (4) failure to train and supervise, (5) false arrest and imprisonment, (6) respondeat superior, (7) violation of the Fourteenth Amendment, (8) malicious

2

prosecution, and (9) punitive damages. Defendants now move to dismiss or, in the alternative, for summary judgment.

ANALYSIS

Two plaintiffs bring nine claims against three defendants. To streamline analysis, the Court will divide these claims into three groups. First, the Court will group these claims by defendant. Then, it will group them by plaintiff. Finally, it will analyze the remaining claims by cause of action.

*I. Grouped by Defendant*

There are three defendants: the City, Chief Chandler, and Officer Jenkins. The Easons bring federal and state-law claims against each of these defendants. This Court will address the claims against the two individual defendants first.

*A. Individual Defendants*

The Easons sue two individual defendants: Chief Chandler in his official capacity and Officer Jenkins in both his individual and official capacities. Regarding Plaintiffs' official capacity designations, a claim brought against a government employee in his official capacity is a claim against the government entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *McCarthy v. Hawkins*, 381 F.3d 407, 414 (5th Cir. 2004). Because Plaintiffs are also suing the governmental entity that Chief Chandler and Officer Jenkins worked for, i.e. the City, this Court will treat any official capacity claim against them as a claim against the City of Senatobia. Chief Chandler (who was sued solely in his official capacity) is hereby dismissed as a redundant defendant. *See Fife v. Vicksburg*

3

*Healthcare, LLC*, 945 F.Supp.2d 721, 731 (S.D. Miss. 2013) ("Plaintiff's official capacity claims against Defendant [] are redundant since her employer ... is a party to this lawsuit."); *Tuskan v. Jackson County, Miss.*, No. 1:13cv356–HSO–RHW, 2014 WL 3747606 (S.D. Miss. July 29, 2014) (dismissing official capacity claims as redundant). Officer Jenkins is now the only remaining individual defendant.

*i. Federal Claims Against Officer Jenkins*

The Easons sue Officer Jenkins in his individual capacity as well, bringing both federal and state-law claims against him. Officer Jenkins argues that the doctrine of qualified immunity bars the federal-law claims. Qualified immunity is a judicially created legal doctrine which "shields federal and state officials from money damages." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity applies to federal, and not state-law, claims. *Tuttle v. Sepolio*, 68 F.4th 969, 976 (5th Cir. 2023) (citing *Brown v. Miller*, 519 F.3d 231, 238–39 (5th Cir. 2008)). To survive a qualified immunity defense, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft*, 563 U.S. at 735.

The Supreme Court has instructed that "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Id*. Regarding the clearly-established-right prong, "A right is 'clearly established' if it is 'one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "Unless existing precedent 'squarely governs' the conduct at issue, an official will be entitled to qualified immunity." *Id*. (citing *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam)).

4

"It is the plaintiff's burden to find a case in [their] favor." *Bustillos v. El Paso County Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018).

The Easons do not satisfy this burden. In their response to Defendants' qualified immunity argument, the Easons cite no law showing that a clearly established right was violated. Their analysis, in its entirety, reads:

> In this matter, Defendants' misconduct violated clearly established law and caused Plaintiffs injuries and damages. Defendants violated Plaintiffs' Fourteenth and Fourth Amendment rights. The above claims and supporting facts are illustrated in the pleadings. Additionally, Plaintiffs' claims present genuine issues of material fact and are not foreclosed by qualified immunity. In accordance with the foregoing, Defendants' motion should be denied.

For the Easons to sustain their federal claims against Officer Jenkins, they were required to show that a minor has a clearly established right to be free from arrest. They did not do this. "[C]onclusory statements, naked assertions, and threadbare recitals fail to plausibly show violations … of [] clearly established constitutional rights." *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023). Because the Easons have failed to satisfy their required burden, the federal claims against Officer Jenkins are dismissed.

### ii. State-Law Claims Against Officer Jenkins

The Easons also sue Officer Jenkins under several state-law causes of action. Defendants argue that the Police Exemption of the Mississippi Tort Claims Act ("MTCA") precludes liability for these claims. The Police Exemption prevents police officers from being held liable for actions taken "within the course and scope of their employment" unless they acted "in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." Miss. Code Ann. §11-46-9(1)(c). Reckless disregard is a high standard, "a higher standard than gross negligence." *Chapman v. City of Quitman*, 954 So.2d 468, 474 (Miss. 2007). It requires "a

5

conscious indifference to consequences, amounting almost to a willingness that harm should follow." *Id*. (citing *Maye v. Pearl River County*, 758 So.2d 391, 394 (¶ 16) (Miss. 1999)). It is the plaintiff's burden to show this by a preponderance of the evidence. *Id*.

The Easons cannot meet this burden. The "safety" referred to in the statute above and the "harm" referred in the caselaw are both physical. This is supported by the text of the statute and the cases interpreting it.

None of the one-hundred twenty-one Mississippi cases which cite Miss. Code Ann. §11-46-9(1)(c) have removed an officer from the protection of the Police Exemption based solely on a disregard for a claimant's non-physical safety. *See, e.g., Yazoo City v. Hampton*, 386 So.3d 355, 358 (Miss. 2024) (finding that a negligent fire response which caused an absent homeowner psychological stress resulting in a heart condition did not qualify as "reckless disregard" of the homeowner's safety); *City of Vicksburg v. Williams*, 294 So.3d 599 (Miss. 2020) (finding indignity which resulted from an arrest could not support a finding of reckless disregard for the plaintiff's safety). In *Lee County v. Davis*, the Mississippi Supreme Court held that "the [plaintiffs'] argument that '[w]hether or not [Plaintiff] sustained physical injury is immaterial …' is not persuasive given the clear and unambiguous language of Miss. Code Ann. § 11–46–9(1)(c)… All prior cases discussing the 'reckless disregard' exception have involved personal injury." 838 So.2d 243, 245-46 (Miss. 2003) (internal citations omitted). Thus, Mississippi caselaw requires that a plaintiff be placed in physical danger to overcome the Police Exemption.

The text of the statute supports this as well. The Police Exemption requires reckless disregard for both "safety and well-being." Miss. Code Ann. §11-46-9(1)(c); *Yazoo City v. Hampton*, 386 So.3d 355, 358 (Miss. 2024) (holding that the statute requires a "reckless disregard of the safety *and* well-being of any person." (emphasis in original)). If "safety" was allowed to

6

encompass both physical and non-physical safety, then "well-being" would be rendered superfluous. Mississippi law does not allow this. *Moore v. State*, 287 So.3d 905, 918 (Miss. 2019) ("'A construction which will render any part of a statute inoperative, superfluous, or meaningless is to be avoided.'" (quoting *McCaffrey's Food Mkt., Inc. v. Miss. Milk Comm'n*, 227 So. 2d 459, 463 (Miss. 1969))). Thus, the "safety" in the statute necessarily refers to physical safety.

Q.E.'s physical safety was never disregarded. When the child was arrested, no officer touched him or placed him in restraints, and he was carefully driven to the police station. Therefore, the Police Exemption of the MTCA applies, and the state-law claims against Officer Jenkins fail. The only remaining defendant is the City of Senatobia ("the City").

### B. The City of Senatobia

The Easons' state-law claims against the City are also foreclosed by the Police Exemption of the MTCA. The full text of the Police Exemption reads:

> A *governmental entity and its employees* acting within the course and scope of their employment or duties shall not be liable for any claim: Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury[.]

Miss. Code Ann. §11-46-9(1)(c) (emphasis added). Thus, just like Officer Jenkins, the City of Senatobia is shielded from state-law liability. *See Yazoo City v. Hampton*, 386 So.3d 355, 358 (Miss. 2024) ("Yazoo City is therefore immune under [Miss. Code Ann. §] 11-46-9(1)(c)."). The only remaining claims are the Easons' federal claims. The only remaining defendant is the City of Senatobia.

7

*II. Grouped by Plaintiff*

There are two plaintiffs: Q.E., the ten-year-old boy who was arrested, and Ms. Eason, his mother. Ms. Eason was never arrested or detained by the Senatobia Police Department. Her claims stem solely from what happened to her son.

The City argues that Ms. Eason's federal claims fail because "[t]he Fifth Circuit has long held that the Constitution does not protect citizens from witnessing police action as a bystander." (citing *Grandstaff v. Borger*, 767 F.2d 161, 172 (5th Cir. 1985), *Harmon v. City of Arlington, Tex.*, 47 F. Supp. 3d 561, 571-72 (N.D. Tex. 2020)). The Easons completely ignore this argument in their Response. Ignoring an argument constitutes waiver of those claims. *See McMullen v. Starkville-Oktibbeha Cons. Sch. Dist.*, 200 F.Supp.3d 649, 653-54 (N.D. Miss. 2016) (finding claims were abandoned when plaintiffs failed to address arguments against them on summary judgment); *Lewis v. City of Hous.*, No. 4:22-CV-00844, 2023 WL 2249991, at *4 (S.D. Tex. Feb. 27, 2023), *aff'd sub nom. Lewis v. Inocencio*, No. 23-20098, 2024 WL 229274 (5th Cir. Jan. 22, 2024) ("failure to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of those issues at the district court level"); *Morton v Social Security Administration,* 2016 WL 5724810 (E.D. La. 2016) ("Poorly organized, unclear arguments are waived due to inadequate briefing. *Perez v. Barnhart*, 415 F.3d 457, 462 n.4 (5th Cir. 2005); *see Foster v. Townsley*, 243 F.3d 210, 212 n.1 (5th Cir. 2001) (holding that issues inadequately briefed are deemed waived)."). Ms. Eason's federal claims are therefore waived. Q.E. is the only remaining Plaintiff. The City is the only remaining defendant. Only Q.E.'s federal claims remain.

*III. Grouped by Claim*

Q.E. asserts six remaining claims against the City: (1) excessive force, (2), Fourteenth Amendment violations, (3) respondeat superior, (4) malicious prosecution, (5) failure to train and supervise, and (6) punitive damages. Although Q.E. does not specify whether his respondeat superior and malicious prosecution claims are brought under federal or state law, because the Police Exemption of the MTCA forecloses liability under state law, this Court will assume these claims were brought under federal law.

*A. Excessive Force*

Q.E. sues the city for excessive force in violation of the Fourth Amendment. The City argues that Q.E.'s excessive force claim fails because "he does not allege any force was used at all." To establish a claim of excessive force, "a plaintiff must show that, in addition to being seized, he suffered '(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 846 (5th Cir. 2009) (quoting *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006)).

It is unclear whether "use of force" requires the physical application of force or not. *Compare*: *Black's Law Dictionary* (12th ed. 2024) (defining "force" as "Strength or energy exerted; the cause of motion or change; esp., physical power…"), *and Rodgers v. Paquet*, No. Civ.A. 3:01-CV-0969N, 2004 WL 1672311 at *2 (N.E. Tex. July 26, 2004) ("Without proof of physical injury, an excessive force claim does not lie." (citing *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996)).) *with*: *Flores v. City of Palacios*, 381 F.3d 391, 398 ("[P]sychological injuries may sustain a Fourth Amendment claim."), *and Teague ex rel. C.R.T. v. Texas City Independent School Dist.*, 348

9

F.Supp.2d 785, 794 (S.D. Tex. 2004) ("Although excessive force claims usually involve physical force, there is no requirement that it be so. 'Force' can be psychological." (citing *Black's Law Dictionary*)), *and* 5th Cir. Pattern Jury Instructions (Civil Cases) (2020) at 89 ("physical coercion or threat of coercion" in the instruction on excessive force claims). Even if physical force is not required, however, it is clear that *some* amount of force, whether physical or psychological, is. *Id*; *Cf. Ikerd v. Blair*, 101 F.3d 430, 434 n.10 (5th Cir. 1996) ("At least one court has suggested that no physical injury is required to state an excessive force claim when a police officer holds a gun to the head of a nine-year-old child and threatens to pull the trigger. *See McDonald, III v. Haskins*, 966 F.2d 292, 292–95 (7th Cir.1992).").

No force was used on Q.E. here. According to the bodycam footage, the arrest proceeded as follows: Officer One approached Ms. Eason, who was standing by her car while her son sat in the backseat, and Officer One told her, "Here's what we have to do. We have to take [Q.E.] in." He then asked Ms. Eason how old Q.E. was, and she answered, "Ten." He responded, "Can you have [Q.E.] step out for me." Officer One then quietly asked his boss if they are supposed to put handcuffs on a ten-year-old, and the boss said, "I wouldn't." Officer One then asked Officer Two, within earshot of Q.E., "Can you take him to the back of the [police] car." Officer Two then said, "Come on, buddy," and Q.E. followed him to the police car and climbed into the backseat without being touched. Officer Two told Q.E. that they "just have to do some paperwork" at the police station. He then told Q.E.'s mother, "We are not putting handcuffs or anything on him, he is just going to ride back here with us, okay?" Officer One then interjects, "We are just going to do a summons, and you are going to get him right back, okay?" Officer Two then asked Ms. Eason if she wanted to talk to Q.E. for a second, and she briefly consoled the boy. Officer Two then told

10

Q.E., "You are just going to come with us and [your mother] is going to be right behind us, okay?" The two officers then drove the child to the police station.

If any force was used here, it was not excessive. Outside of Q.E. requesting that he be arrested, it is hard to imagine how the officers could have used any less force than they did. The concerning conduct is not the *force* used to facilitate Q.E.'s arrest, but rather that an arrest occurred at all. Q.E.'s excessive force claim is not the proper mechanism to address this, and it therefore fails.

### B. Fourteenth Amendment

Q.E. also sues the City for an unspecified Fourteenth Amendment violation. In his Response, Q.E. clarifies that "a person's bodily integrity is protected by the Fourteenth Amendment guarantee of due process. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451 (5th Cir. 1994)." Thus, Q.E. brings a bodily-integrity claim.

"A violation of the right to bodily integrity follows from 'behavior of the governmental officer [that] is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Tyson v. Sabine*, 42 F.4th 508, 517 (5th Cir. 2022) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). The Fifth Circuit recognizes bodily integrity as a substantive due process right protected by the Fourteenth Amendment, even "where the officer never physically touched the plaintiff." *Tyson v. Sabine*, 42 F.4th 508, 518 (5th Cir. 2022). The Fifth Circuit has found a violation of this right when: (1) a police officer forced a woman to strip naked in her home while the officer masturbated to completion, *Tyson v. Sabine*, 42 F.4th 508, 518 (5th Cir. 20222), (2) a teacher groomed and molested a 15-year-old student, *Doe v. Taylor Ind. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994), and (3) a teacher lashed a second-grade student to a chair for

11

two school days. *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303, 305 (5th Cir. 1987). On the other hand, the Fifth Circuit has declined to find a violation when: (1) a police officer loaned a gun to a confidential informant who later used it to shoot the plaintiff, *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002), (2) a female case worker who was investigating the suspected sexual abuse of a child took naked pictures of a six year old girl without the mother's express consent, *Roe v. Tex. Dept. Prot. Reg. Services*, 299 F.3d 395 (5th Cir. 2002), and (3) a school resource officer used a stun gun on an unruly special needs student. *J.W. v. Paley*, 81 F.4th 440 (5th Cir. 2023).

The facts here fall well below all of these cases—even the cases where the Fifth Circuit found no Constitutional violation. The officers' conduct in arresting Q.E. did not rise to the level of "egregious," nor was it so outrageous as to "shock the contemporary conscience." *Tyson v. Sabine*, 42 F.4th 508, 517 (5th Cir. 2022). While dismissing a bodily integrity claim, the Fifth Circuit has stated:

> In the bodily integrity cases, we often have considered criminal assaults committed by… persons to whom the Fourth Amendment does not readily or easily apply. Where the plaintiff alleges only harms stemming from a social worker's search, the Fourth Amendment provides the sole means for analysis.

*Roe v. Texas Dept. of Protective and Regulatory Services*, 299 F.3d 395, 412 (5th Cir. 2002). The Fifth Circuit went on to hold that because the Fourth Amendment "fully embraces the governmental action complained. We [] cannot consider plaintiffs' [Fourteenth Amendment] substantive due process rights to…bodily integrity." *Id*. Like in *Roe*, the Fourth Amendment fully embraces the conduct in question here—an unreasonable seizure. A Due Process claim under the Fourteenth Amendment is likewise unavailing. For these reasons, Q.E.'s Fourteenth Amendment claim fails.

*C. Respondeat Superior*

Q.E. sues the City under a respondeat superior theory of liability. Respondeat superior is a legal doctrine that holds an organization responsible for the actions of its agents. *Meyer v. Holley*, 537 U.S. 280, 286 (2003) (citing *New Orleans, M. & C. R.R. Co. v. Hanning,* 82 U.S. 649, 657 (1873) ("The principal is liable for the acts and negligence of the agent in the course of his employment, although he did not authorize or did not know of the acts complained of.")). Respondeat superior, then, is not a tort claim, but a mechanism for holding a supervisory entity responsible for the tort of another.

Even so, "[c]ities are not liable for constitutional violations committed by city employees unless those violations result directly from a municipal custom or policy." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989), *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000)). In the eponymous case *Monell*, the Supreme Court held that "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dept. Soc. Svcs.*, 436 U.S. 658, 691 (1978). All Q.E.'s remaining claims are brought under 42 U.S.C. § 1983. Thus, Q.E.'s respondeat superior theory is unavailing.

*D. Malicious Prosecution*

Q.E. also sues the City for malicious prosecution. The elements of a malicious prosecution claim are "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for

such proceeding; (5) malice; and (6) damages." *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023). The City argues that this claim fails for lack of malice and the existence of probable cause.

### *i.* Lack of Malice

The Supreme Court has held that malice may be inferred from lack of probable cause. *Stewart v. Sonneborn*, 98 U.S. 187, 192 (1878). There is no Fifth Circuit case that defines "malice" in the malicious prosecution context without referencing state law, and the Circuit has raised poignant concerns about allowing a malicious-prosecution cause of action arising under the U.S. Constitution to vary based on the whims of individual states. *Castellano v. Fragozo*, 352 F.3d 939, 955 (5th Cir. 2003) ("It is a vivid example of the hazards of blending state tort law with federal law in an undifferentiated way. The Fourth Amendment of the United States Constitution cannot be circumscribed by state tort law, yet this is the practical effect."). Thus, this Court will turn to *Black's Law Dictionary*, which defines "malice" as "1. The intent, without justification or excuse, to commit a wrongful act. 2. Reckless disregard of the law or of a person's legal rights." *Black's Law Dictionary* (12th ed. 2024).

The actions of the City meet this definition. When the officers arrested Q.E., they did not do so to ensure justice or protect the public. They did so pretextually, to manipulate his mother and guarantee that she would show up at the police station. Q.E. was cannon fodder for an investigation he had nothing to do with. Then, once Q.E. had unwittingly lured his mother to the police station, the City, rather than let him go with a warning, charged him with being a child in need of supervision. All of this was done with utter disregard for Q.E.'s rights, foreseeable emotional harm, and the inconvenience that an unwarranted youth court proceeding would cause. This constitutes malice, and, as will be shown below, it was also clearly against the law.

*ii.* <u>Probable Cause</u>

The Fifth Circuit has held, "For purposes of malicious prosecution, probable cause means the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted.'" *Gordy v. Burns*, 294 F.3d 722, 728 (5th Cir. 2002). The term "probable cause" is shorthand for "[probable cause] to conclude that the suspect had committed, or was in the process of committing, an offense." *Espinal v. City of Houston*, 96 F.4th 741, 745 (5th Cir. 2024) (quoting *Loftin v. City of Prentiss*, 33 F.4th 774, 780 (5th Cir. 2022)).

Probable cause did not exist in this case. The City argues that since an officer saw Q.E. urinating in public, there was probable cause to believe he violated Mississippi's indecent exposure statute. *See* Miss. Code Ann. § 97-29-31. However, since a ten-year-old cannot have the requisite state of mind, it was impossible for the child to violate that statute, and they could not have rationally concluded that he did so. Mississippi's indecent exposure statute reads:

> A person who willfully and lewdly exposes his person, or private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, is guilty of a misdemeanor… It is not a violation of this statute for a woman to breast-feed.

Miss. Code Ann. § 97-29-31. Thus, a person must act both "willfully and lewdly" to be guilty of this crime. *Id*; *Pendergrass v. State*, 193 So.2d 126, 129 (Miss. 1966) ("Willfulness and lewdness are essential elements…"). The Mississippi Supreme Court has instructed that the term "lewdly" is to be given its commonsense understanding, and that court has employed the *Black's Law Dictionary* definition: "[o]bscene or indecent; tending to moral impurity or wantonness <lewd behavior>." *Richmond v. City of Corinth*, 816 So.2d 373, 378-79 (Miss. 2002) (citing *Black's Law Dictionary* (7th ed. 1999)).

A ten-year-old cannot act lewdly under the law. Even beyond the common sense understanding that when a young boy urinates outside, he is not doing so with the intention of being obscene, a ten-year old's inability to act lewdly is supported by law. The State of Mississippi, like every other state, has determined that individuals under a certain age cannot consent to sexual intercourse. Miss. Code Ann. §97-3-65; *Phillipson v. State*, 943 So.2d 670, 672 (Miss. 2006) ("[A] minor that fits the criteria of the statute simply does not have the legal power to consent.") The reason for this is obvious: "They simply cannot appreciate the significance or the consequences of their actions." *Collins v. State*, 691 So.2d 918, 924 (Miss. 1997). This inherent, juvenile inability is further evinced by rules proscribing the purchase of tobacco, voting, contracting, and more. (Until a child is twelve, their parental preference cannot even be considered in their own custody proceeding. Miss. Code Ann. §93-11-65). And the inability is most evident when the action in question—indecent exposure—is of a sexual nature, since no child is capable of understanding the nature or significance of sex. If a child cannot appreciate the sexual nature of things, then they cannot act lewdly. Q.E. therefore could not have committed the crime of indecent exposure. If Q.E. was clearly incapable of committing the crime, then the officers could not have reasonably believed he was guilty of it, and probable cause did not exist.

### *iii.* Monell

Of course, municipal liability is only allowed if Q.E. can show "that [his] injury was caused by a municipal policy or custom." *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 30 (2010) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978)). Q.E. can show this. In the first bodycam video, one of the officers, in an attempt to console the child after he was arrested, stated, "We just had to bring you up here. Part of our policy man." In the second bodycam video at the 22:34 mark, a police officer with apparent supervisory authority instructed another officer

16

to leave the door to the jail cell open while processing Q.E. because Q.E. was so young. The officer further instructed:

> So juveniles, depending on the charge, {unintelligible} secured location. So, if he's in there and two doors are shut, {unintelligible} secured location. That way {unintelligible} spend money.

These interactions evince a juvenile arrest policy that, at this stage of litigation, could plausibly be the driving force behind Q.E.'s arrest—an arrest that was a clear violation of Mississippi law.

Mississippi Code Annotated section 43-21-303 states:

> (1) No child in a matter in which the youth court has original exclusive jurisdiction shall be taken into custody by any person without a custody order except that:
>
> (a) A law enforcement officer may take a child in custody if:
>
> (i) Grounds exist for the arrest of an adult in identical circumstances; and
>
> (ii) Such law enforcement officer has probable cause to believe that custody is necessary as defined in Section 43-21-301; and
>
> (iii) Such law enforcement officer can find no reasonable alternative to custody[.]

This law—and Q.E.'s related right to be free from unlawful arrest—was violated when Q.E. was taken into custody. Two of the three required elements were not met. The required probable cause was missing, and reasonable alternatives to custody existed. A policy or practice of the City could have caused this.

The other elements of malicious prosecution are not disputed, and each of them appears met. Q.E.'s malicious prosecution claim survives.

### E. Failure to Train and Supervise

Q.E. also brings a §1983 claim for negligent hiring, training, and supervision. The Supreme Court has explained "that a municipality can be liable for failure to train its employees when the municipality's failure shows 'a deliberate indifference to the rights of its inhabitants.'" *Farmer v.*

17

*Brennan*, 511 U.S. 825, 840 (1994) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). "Deliberate indifference is more than mere negligence." *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir.2000) (citation omitted). The municipality's failure to train must be the "moving force" that caused the specific constitutional violation. *Brown v. Bryan Co., Okla.*, 219 F.3d 450, 461 (5th Cir. 2000).

A failure to train or supervise could be the moving force behind the Constitutional violation in this case. The officers appeared eager to follow the law, asking their supervisor if they were supposed to put handcuffs on a ten-year-old, and, for one officer, even going so far as to discuss individual Supreme Court cases with his supervisor before expressing a desire to be sent reading material on the subject to better understand the Constitutional limits on his job. In all likelihood, if the officers had been aware that arresting a child without a custody order was a violation of Mississippi law, they would not have done so. The fact that they arrested Q.E. suggests that they did not know about this law, which shows a failure to train or supervise. Surely, at a minimum, an officer should be made aware of the clear, statutory strictures on juvenile arrests. Q.E.'s §1983 claim, at least insofar as it relates to training and supervision, therefore survives.

### F. Punitive Damages

Finally, Q.E. seeks punitive damages against the City. He argues that "[p]unitive damages may be awarded in Section 1983 cases." The Supreme Court has held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 237, 271 (1981); *and see Cox v. City of Jackson*, 343 F.Supp.2d 546, 579 (S.D. Miss. 2004) ("Punitive damages are indeed recoverable under § 1983…; however, the awarding of such damages is not available against a municipal defendant.") (citing *Newport*, 453 U.S. at 267). Q.E.'s punitive damages claim therefore fails.

CONCLUSION

**ACCORDINGLY**, Defendants the City of Senatobia, Richard Chandler, and Zachary Jenkins' Motion to Dismiss or, Alternatively, for Summary Judgment [47] is **GRANTED IN PART.**

All claims against Defendants Richard Chandler and Zachary Jenkins are dismissed, and both individuals are dismissed as defendants. All claims by Plaintiff Latonya Eason are dismissed, and she is dismissed as a plaintiff. Q.E. is the only remaining plaintiff, and the City of Senatobia is the only remaining defendant. All Q.E.'s state-law claims are dismissed, and, with respect to the federal claims, only Q.E.'s §1983 claims for (1) malicious prosecution and (2) negligent training and supervision remain. All other claims are dismissed.

**SO ORDERED** this the 31st day of March, 2025.

    /s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI